IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MONICA JOHNSON, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION 13-0431-WS-M |
| ) | |
| MOBILE INFIRMARY ASSOCIATION ) | |
| d/b/a MOBILE INFIRMARY MEDICAL ) | |
| CENTER, ) | |
| ) | |
|     Defendant. ) | |

**ORDER**

This matter comes before the Court on "Plaintiff's Motion Pursuant to Rule 59(e) to Alter or Amend the Order Granting Summary Judgment to the Defendant as to Plaintiff's Count II" (doc. 70).[1]

On April 6, 2015, the undersigned entered an Order (doc. 65) that, *inter alia*, granted defendant's Motion for Summary Judgment as to Count II. In that claim, plaintiff, Monica Johnson, alleged that Mobile Infirmary discriminated against her on the basis of her race (black) by imposing more stringent discipline on her for attendance violations than it did on white employees. To meet her burden (as part of her *prima facie* case) of showing a similarly situated comparator, Johnson identified a white employee named Jason Thompson. The April 6 Order determined that (i) no inference of disparate treatment arose as to the written warnings which Johnson received on December 26, 2012 and Thompson received on January 3, 2013, from the same supervisor for similar violations of Mobile Infirmary policy; and (ii) Thompson was not similarly situated to Johnson with respect to post-January 3 discipline because, unlike

---

[1] This Motion was filed in the wee hours of April 14, 2015, some 34 minutes after a previous iteration of plaintiff's Motion (doc. 69), styled exactly the same way. It appears that the subsequent version was intended to correct formatting (and perhaps other) defects in the initial version. Under the circumstances, plaintiff's corrected Motion supersedes her earlier filing, so plaintiff's first-filed Motion Pursuant to Rule 59(e) to Alter or Amend (doc. 69) is **moot**.

Thompson, Johnson incurred a cluster of six additional violations of the policy within 16 days after she received a written warning, whereas Thompson showed short-term improvement for months after his warning.  Johnson seeks reconsideration of both of these aspects of the April 6 Order pursuant to Rule 59(e), Fed.R.Civ.P.

As a matter of well-settled law, "[t]he only grounds for granting a Rule 59 motion are newly-discovered evidence or manifest errors of law or fact."  *United States v. Marion*, 562 F.3d 1330, 1335 (11th Cir. 2009) (citation and internal marks omitted); *see also Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (similar).  Authority is legion for the proposition that motions to reconsider "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment."  *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5, 128 S.Ct. 2605, 171 L.Ed.2d 570 (2008) (citation omitted).[2]  Rule 59(e) motions do not afford an unsuccessful litigant "two bites at the apple."  *American Home Assur. Co. v. Glenn Estess & Associates, Inc.*, 763 F.2d 1237, 1239 (11th Cir. 1985).  Nor are such motions properly filed "as a kneejerk reaction by a dissatisfied federal court loser."  *Lee v. Thomas*, 2012 WL 3137901, *2 (S.D. Ala. Aug. 1, 2012).[3]  "They are neither appeal substitutes

---

[2]     *See also Smith v. Ocwen Financial*, 2012 WL 3758378, *2 (11th Cir. Aug. 30, 2012) ("A motion for reconsideration cannot be used to relitigate old matters, raise arguments, or present evidence that could have been raised prior to the entry of judgment.") (citation omitted); *Richardson v. Johnson*, 598 F.3d 734, 740 (11th Cir. 2010) (similar); *Kight v. IPD Printing & Distributing, Inc.*, 2011 WL 2015055, *1 (11th Cir. May 24, 2011) (motion for reconsideration properly denied where movant "merely attempted to relitigate old matters and presented evidence that could have been raised prior to the entry of judgment"); *Morton v. Astrue*, 2010 WL 2130613, *3 (11th Cir. May 27, 2010) ("In his motion to alter or amend judgment, … Morton merely attempted to reargue factual issues previously decided by the district court.  The district court therefore did not abuse its discretion in denying the motion."); *Dyas v. City of Fairhope*, 2009 WL 5062367, *3 (S.D. Ala. Dec. 23, 2009) ("Motions to reconsider … do not exist to permit losing parties to prop up arguments previously made or to inject new ones, nor to provide evidence or authority previously omitted.  They do not, in short, serve to relieve a party of the consequences of its original, limited presentation.").

[3]     *See also Hughes v. Stryker Sales Corp.*, 2010 WL 2608957, *2 (S.D. Ala. June 28, 2010) (rejecting notion that motions to reconsider "are appropriate whenever the losing party thinks the District Court got it wrong," but finding that they are "an extraordinary remedy" that must be "employed sparingly") (citations omitted); *Garrett v. Stanton*, 2010 WL 320492, *3 (S.D. Ala. Jan. 18, 2010) ("Far too often, litigants operate under the flawed assumption that any adverse ruling on a dispositive motion confers upon them license … to relitigate issues that have (Continued)

nor a 'dry run' to test arguments in anticipation of a forthcoming appeal." *Id.*  Johnson's Motion posits that the April 6 Order suffers from "manifest errors of law or fact," such that Rule 59(e) reconsideration is appropriate.  The undersigned disagrees.

With regard to the late December / early January written warnings issued to both Johnson and Thompson by their supervisor, Stefanie Willis-Turner, plaintiff now insists that "Willis-Turner had not treated Johnson and Thompson the same way at all." (Doc. 70, at 2.)[4]  The threshold problem is that the Court has already considered in detail and rejected plaintiff's argument that those written warnings reflected disparate treatment (*see* doc. 65, at 18 fn. 19); therefore, plaintiff's rehash of arguments that have already been considered and rejected is not a proper basis for a motion to reconsider.

Even if Johnson's Motion were properly raised on this point, it would nonetheless be meritless.  The uncontroverted facts are that, as of late December 2012, Johnson had five "occurrences" of time and attendance violations, plus two previous oral warnings from 2009 and 2011 for violation of the same policy.[5]  At that time, Thompson had seven "occurrences" of time and attendance violations, plus one written warning from August 2012.  Plaintiff has not shown

---

already been decided, to champion new arguments that could have been made before, and otherwise to attempt a 'do-over' to erase a disappointing outcome.  This is improper.").

[4]   Curiously, plaintiff also states the following in her Motion to Reconsider: "But yet, no discipline for Jason Thompson on January 3, 2013." (Doc. 70, at 3.)  This statement is patently incorrect.  Indeed, plaintiff's own exhibits show that Thompson received a written warning on January 3, 2013 for time and attendance violations. (Doc. 70, Exh. B.)  It cannot reasonably be argued that a written warning is not discipline; therefore, plaintiff's assertion is difficult to fathom.

[5]   In the Motion to Reconsider, plaintiff takes Mobile Infirmary to task for listing Johnson's prior oral warnings in her December 2012 Corrective Action Report. (Doc. 70, at 4.)  However, she points to nothing in Mobile Infirmary's policies or practices that would forbid defendant from considering her history of time and attendance violations in imposing discipline, whether or not that disciplinary history constituted an "occurrence" for purposes of counting violations of the time and attendance policy.  In fact, defendant's written policies expressly allow Mobile Infirmary to take into account patterns of absenteeism or tardiness.  *See* footnote 6, *infra*.  In short, nothing about the recitation of those two oral warnings in Johnson's December 2012 written warning raises a colorable inference of racially discriminatory animus by the disciplining supervisor.

that it was violative of defendant's policies, or otherwise indicative of racially disparate treatment, for Mobile Infirmary to discipline Johnson and Thompson the same way at that time based on those similar (albeit not identical) attendance records.  Plaintiff maintains that Mobile Infirmary's "Absence, Tardiness and Time Keeping Policy" (the "Policy") (doc. 57, Exh. C) provided that Thompson must be suspended, rather than simply being given another warning. (Doc. 70, at 3.)  However, she points to no language in the Policy that requires such an outcome, and the Court has found none.  The Court cannot simply assume, as Johnson does, that more stringent disciplinary action was mandatory for Thompson under these circumstances.[6]  Even if it were, the fact remains that Thompson and Johnson received exactly the same discipline from Mobile Infirmary in December 2012 / early January 2013.  Plaintiff's subjective belief that Mobile Infirmary should have taken more severe disciplinary action against Thompson in no way raises an inference of race discrimination where, again, both the white employee and the black employee received written warnings within eight days of each of other for similar violations of the Policy.  That plaintiff thinks her conduct (five occurrences plus two oral warnings) was less egregious than Thompson's (seven occurrences plus one written warning from August 2012) does not make it so, and neither this Court nor a reasonable factfinder at trial could second-guess Mobile Infirmary's reasonable human resources decision to treat them the same.

      Equally unavailing is the Rule 59(e) Motion's attack on the April 6 Order's conclusion that Johnson was not similarly situated to Thompson because, unlike Thompson, Johnson incurred many more "occurrences" in the days following her December 2012 written warning. Plaintiff's primary argument here is that most of the January 2013 occurrences should not count because they should have been deemed FMLA-qualified leave, such that they "are no longer valid violations at this summary judgment stage" (doc. 70, at 4).  Thus, plaintiff reasons, Johnson's attendance record was far less serious than Thompson's, yet she was suspended while Thompson was not.  This convoluted theory improperly conflates plaintiff's FMLA cause of action at Count III (which survived summary judgment) with her Title VII / Section 1981 race

---

[6] Again, the Court previously addressed this point in the April 6 Order, observing that plaintiff has made no attempt to account for Mobile Infirmary's policy statement that "[p]atterns of absenteeism or tardiness will be addressed through the guidelines of the Performance and Corrective Action policy."  (Doc. 57, Exh. C at 3.)

discrimination claim at Count II (which did not).  To be sure, if plaintiff is correct that her January occurrences were FMLA-protected, then such absences, tardies and early departures could not be used against her for disciplinary purposes, and her mid-January suspension for those occurrences would be unlawful.  That's Count III – the FMLA claim – which is going to trial.  However, plaintiff cannot logically (much less legally) piggyback a race discrimination claim on this alleged FMLA violation.  If Mobile Infirmary improperly classified her FMLA-protected absences as violations of the Policy, that fact would in no way raise an inference of racially disparate treatment, absent evidence that it classified the absences of similarly situated white employees differently.  Again, plaintiff has made no such showing.  The point is simple:  If Mobile Infirmary incorrectly failed to treat Johnson's January 2013 absences as FMLA-protected, then Johnson will prevail on her FMLA claim at trial.  But such an error / omission on Mobile Infirmary's part could not be used to bootstrap a race discrimination claim, where there is not a scrap of evidence of racially discriminatory practices by Mobile Infirmary in classifying absences as FMLA-protected or not.

There is a broader point to be made here, as well.  Recall that in the "violation of work rules" context, a co-worker is not similarly situated for purposes of comparison unless his or her misconduct is nearly identical to that of the plaintiff.  *See, e.g., Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004) (stating that a comparator must be "nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer"); *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999) ("We require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.").  Where the alleged comparator is not similarly situated to the plaintiff in all relevant respects, "the different application of workplace rules does not constitute illegal discrimination." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1326 n.17 (11th Cir. 2011) (citation omitted).  The April 6 Order found that Thompson's misconduct was not nearly identical to Johnson's.  Plaintiff does not argue otherwise, but instead suggests based on her own subjective interpretation that Mobile Infirmary should have equated Thompson's attendance record with Johnson's (even though they were different) and suspended him too.  This is exactly the kind of *post hoc* second-guessing that the "nearly identical" rule was designed to prevent.  It was entirely reasonable of Mobile Infirmary to suspend Johnson (but not Thompson) for two shifts when Johnson experienced a

cluster of additional Policy violations within days after being issued a written warning, while Thompson did not.  No inference of race discrimination arises from these facts.

      In short, the Court finds that the April 6 Order is not plagued by a "misapprehension of the facts," "clear error" or "manifest injustice," and that plaintiff's arguments to the contrary are not persuasive.  The Motion Pursuant to Rule 59(e) to Alter or Amend the Order Granting Summary Judgment (doc. 70) is **denied**.

      DONE and ORDERED this 16th day of April, 2015.

      s/ WILLIAM H. STEELE  
      CHIEF UNITED STATES DISTRICT JUDGE